# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 95-50204
(Summary Calendar)

FM PROPERTIES OPERATING CO.,

Plaintiff-Appellee,

versus

CITY OF AUSTIN,

Defendant, and

SAVE OUR SPRINGS LEGAL DEFENSE FUND, INC.,

Movant-Appellant.

Appeal from the United States District Court
for the Western District of Texas
(A94-CA-647-JN)

November 21, 1995

Before JOLLY, JONES, and STEWART, Circuit Judges.

PER CURIAM:[*]

Movant-Appellant Save Our Springs Legal Defense Fund, Inc., (SOS) challenges the district court's denial of its motion to intervene as of right in a pending lawsuit brought by FM Properties Operating Company against the City of Austin under 42 U.S.C. § 1983. For the reasons set forth below, we affirm.

## FACTS AND PROCEEDINGS

A group of Austin-area citizens formed the Save Our Springs Coalition for the purpose of lobbying the Austin City Council to pass an ordinance "to adopt stricter provisions for the protection

[*]Local Rule 47.5 provides: "The publication of opinions that have no precedential value and merely decide particular cases on the basis of well-settled principles of law imposes needless expense on the public and burdens on the legal profession." Pursuant to that Rule, the Court has determined that this opinion should not be published.

of the water quality" (SOS Ordinance). The City Council initially rejected the proposal, but the coalition ultimately managed to place its initiative on an election ballot where it was approved by voters on August 8, 1992. The SOS Coalition leaders formed the Save Our Springs Legal Defense Fund, Inc., out of concern the City, which initially had opposed the ordinance, might not enforce it adequately.

In September 1994, claiming that the SOS Ordinance constituted an unconstitutional taking, FM Properties Operating Company (FM) sued the City. FM had begun a real estate development project in the Austin extraterritorial planning jurisdiction in April 1992. The Austin Land Development Code required FM to file preliminary plans with Austin for the subdivisions it proposed to develop. FM also had to file an application for final plat approval and an application for site approval with the City. FM claimed that it had complied with almost all requirements for approval of the project prior to August 9, 1992, the date the SOS Ordinance went into effect. It only lacked the City's final approval of the final plat for the subdivision. FM claimed that the City's Land Development Code existing at the time required the City to approve the site plan when it granted final plat approval. The site plan was then to be released upon the final plat approval. The City, however, did not approve the site plan for the stated reason that FM still needed prior subdivision approval. When the City granted final plat approval, about two weeks after refusing to issue the site plan approval, FM requested approval of the site plan it already had submitted. The City responded that the prior site plan application had expired, so FM refiled an identical application. The City again refused to approve and release the site plan, this time for failure to comply fully with the SOS Ordinance now in effect.

FM argued that the SOS Ordinance was not applicable, citing Texas Government Code § 481.143(a) (Vernon 1990):

> The approval, disapproval, or conditional approval of an application for a permit shall be considered by each regulatory agency solely on the basis of any orders, regulations, ordinances, or other duly adopted requirements in effect at the time the original application for the permit is filed. If a series of permits is required for a project, the orders, regulations, ordinances, or other requirements in effect at the time the original application for the first permit in that series is filed shall be the sole basis for

2

consideration of all subsequent permits required for completion of the project. FM argued that the SOS Ordinance should have no bearing on its development plan because it had submitted its application prior to the enactment of the SOS Ordinance. FM therefore alleged as a substantive due process violation that the City had "arbitrarily, capriciously, and deliberately" denied it its right to develop real estate under the land use regulations existing at the time of its initial application. FM also requested a declaration on the application of municipal ordinances under state statute and an injunction requiring FM to comply only with the laws and regulations existing prior to August 1992.

The City filed a motion to dismiss asserting lack of subject matter jurisdiction, lack of ripeness, and failure to exhaust state remedies. The district court dismissed the taking claim for failure to exhaust available state remedies, but denied the motion with respect to the due process claim.

Prior to trial, FM Properties and the City engaged in settlement negotiations. Shortly thereafter, SOS filed its motion to intervene under Federal Rule of Civil Procedure 24(a)(2). SOS asserted that as the representative of the sponsor of the ballot initiative, it had a per se right to intervene. In denying SOS's motion the district court held that SOS had no interest in the subject matter of the litigation because the ordinance's validity was no longer at issue. Furthermore, SOS did not convince the district court that the City would not represent its interests adequately. A review of record and the briefs supports the court's reasoning.

DISCUSSION

Standard of Review

We review the district court's rule 24(a)(2) determinations under a de novo standard. Doe v. Duncanville Indep. School Dist., 994 F.2d 160, 167 (5th Cir. 1993). In so doing, we recognize that the inquiry under Rule 24(a)(2) is flexible, focusing on the particular facts and circumstances surrounding each application and that "intervention of right must be measured by a practical rather than technical yardstick." United States v. Texas E. Transmission Corp., 923 F.2d 410, 413 (5th

3

Cir.1991).

Rule 24 Intervention

A movant must prove four factors to intervene under Rule 24(a)(2): (1) the application must be timely; (2) the applicant must have an interest in the property or transaction that is the subject of the action; (3) disposition of the matter must impair or impede the applicant's ability to protect that interest; and (4) the applicant's interest must not be adequately represented by the parties to the suit. Kneeland v. National Collegiate Athletic Ass'n, 806 F.2d 1285, 1287 (5th Cir.), cert. denied sub. nom. Southern Methodist Univ. v. Kneeland, 484 U.S. 817 (1987).

The district court denied SOS's motion to intervene after already having dismissed all claims that the SOS Ordinance itself was unconstitutional. All that remained were FM's claims that the City's conduct denied its substantive due process rights. These allegations arose from the City's alleged refusal to approve FM's final plat application. During this period of "delay, " the City adopted the SOS Ordinance. FM claimed that state law mandated that the City consider all applications for permits for its project only on the basis of the ordinances in effect at the time of its application for preliminary subdivision plan approval, before the enactment of the SOS Ordinance. It argued further that by refusing to approve its application, the City meant to force FM to comply with the latter regulation.

SOS's Interest

The district court decided that these arguments did not involve the constitutionality of the SOS Ordinance itself; and, so, they were ripe for consideration. The court later reinstated a temporary takings claim and, in so doing, clarified its dismissal order: it identified the City's alleged "failure to comply with state law and its own ordinances relating to the processing of zoning applications" to be the remaining claim. The temporary takings claim urged the court to find that the effect of the City's failure to comply with its own ordinances and state law in denying the site plan application "has at least temporarily denied [FM] all rights to use and develop its property from that date [the denial of approval] to the date this Court requires [the City] to make such approvals." This

was a prayer for damages for the temporary deprivation of its right to use and develop its land. It was a direct attack on the City's conduct, not the SOS Ordinance. The Ordinance was relevant only because FM did not feel that it was the applicable regulation. Therefore, its validity was not at issue.

A party seeking to intervene as of right must have a direct, substantial, and legally protectable interest in the subject matter of the action. Sierra Club v. Espy, 18 F.3d 1202 (5th Cir. 1994). There is no doubt that SOS is interested in whether FM will have to conform its development plan to the SOS Ordinance or some pre-existing regulation. However that interest does not compel legal protection. SOS tries to frame the issue as a conflict between its ordinance and state and federal statutory and constitutional provisions. Actually, the conflict is whether the City enforced the proper ordinance. In other words, the issue is the application of the Ordinance, not its substance. The district court correctly read FM's claim at the time SOS tried to intervene as an argument that state law mandated FM's compliance with an already existing regulation. Its decision to deny SOS's motion to intervene was justified.

Adequacy of Representation

SOS also argues that the City's initial opposition makes it a poor advocate for the Ordinance. However, SOS has not supported this position with any evidence. In United States v. Franklin Parish Sch. Bd., 47 F.3d 755, an association (coincidentally named SOS for Save Our Schools) of parents sought to intervene in the federal government's school desegregation lawsuit against a parish school board. There we asserted that "[w]hen the party seeking to intervene has the same ultimate objective as a party to the suit, the existing party is presumed to adequately represent the party seeking to intervene unless that party demonstrates adversity of interest, collusion, or nonfeasance." There is no evidence that following enactment of the SOS Ordinance the City of Austin has tried to undermine its enforcement. Indeed, the gist of FM's complaint is that the City's enforcement is overreaching. The fact that the City and FM engaged in settlement negotiations, without more, shows us no illicit collusion compelling SOS's participation. Since the enactment of the Ordinance, there has been no evidence that the City's motivation or interest has been any different from that of SOS. Any prior

5

opposition does not appear to be at all relevant or indicative of the City's post-election conduct.

AFFIRMED.